## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

                           **Case No. 1:21-cr-24**

     **v.**                      **JUDGE DOUGLAS R. COLE**

**CHRISTOPHER SISK,**

      **Defendant.**

## OPINION AND ORDER

This cause comes before the Court on Defendant Christopher Sisk's Combined Motion to Suppress and Motion for a Franks Hearing (Doc. 27). For the reasons explained more fully below, the Court **DENIES** Sisk's Motion (Doc. 27) in both regards.

## BACKGROUND[1]

On November 6, 2020, after a weeks-long investigation into alleged drug trafficking, Cincinnati Police Department ("CPD") officers executed a search warrant at 966 McPherson Avenue in Cincinnati, Ohio. On that same night, and in connection with the same investigation, officers arrested Defendant Christopher Sisk in front of the 966 McPherson Avenue residence.

CPD had begun investigating Sisk a month prior, based on a tip from a confidential informant ("CI") that an individual nicknamed "Flocka" was selling

---

[1] This Background is gleaned from the Indictment (Doc. 3), the Search Warrant Affidavit (Resp. Ex. 2, Doc. 29-2), and the government's Response in Opposition ("Resp.") (Doc. 29). As such, the Court provides the caveat that some of these "facts" are not "proven," and may never be.

fentanyl around Cincinnati's west side. CPD then used the CI, who positively identified "Flocka" as Sisk from an Ohio Bureau of Motor Vehicles ("BMV") photograph, to make several "controlled" drug purchases from Sisk. According to the United States' briefing, the CI purchased substances—later identified as fentanyl and tramadol—from Sisk on October 2, October 22, October 27, and November 2, 2020. These purchases occurred in the area of a Kroger grocery store on the corner of Warsaw Avenue and McPherson Avenue, across the street from the 966 McPherson Avenue address.

The Hamilton County Judge who issued the search warrant for 966 McPherson Avenue did so in reliance on an affidavit sworn by CPD Officer Brandon Connley. (Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2). That affidavit recounts only two of the four alleged drug purchases—those occurring on October 27 and November 2. As to the first, the affidavit states that, between October 27 and 29, Connley directed the CI to place a phone call to Sisk and then dispatched the CI near the Kroger parking lot. Connley avers he saw Sisk exit the 966 McPherson Avenue residence, meet the CI in the Kroger parking lot, exchange fentanyl for money, and immediately return to the 966 McPherson Avenue residence.

As for the second, the affidavit reports that between November 2 and November 4, Connley directed the CI to call Sisk and ask for heroin/fentanyl, then dispatched the CI in the area of 974 McPherson Avenue. Again, Connley avers that he observed Sisk exit the front door of 966 McPherson Avenue, call out to the CI, and make a hand-to-hand drug exchange directly in front of the 966 McPherson Avenue

2

residence (though this paragraph of the affidavit makes no mention of Sisk returning to the residence after completing the exchange).

The search warrant affidavit also states that Connley learned through the CI that Sisk was using two vehicles to conduct his "drug trafficking operation": a white Hyundai, license plate number JAC7106, registered to Kierra Allen at 966 McPherson Avenue, and a gray Pontiac registered to Sisk at 966 McPherson Avenue. Connley avers that he observed Sisk driving the white Hyundai "on multiple occasions during various controlled buys." And, according to the affidavit, the CI told Connley that "Sisk commonly drives [the gray Pontiac] to deliver illegal narcotics in the Cincinnati, Ohio area." Finally, the affidavit states that Sisk "lists 966 McPherson as a place of residence" through the Ohio BMV and that, based on Connley's experience, narcotics dealers commonly keep narcotics, currency, weapons, and other paraphernalia at "residences not listed as their own" in order to conceal their illegal activity.

As a result of the search conducted pursuant to the warrant, CPD officers recovered, among other things, a firearm and a digital scale. On April 1, 2021, a grand jury indicted Sisk on four counts of distribution of a controlled substance and one count of possession of a firearm by a prohibited person. (Indictment, Doc. 3, #11–12). Sisk filed this Motion (Doc. 27) on March 21, 2022. The United States timely responded in opposition (Doc. 29), and Sisk replied in support on May 10, 2022 (Doc. 30). The matter is now before the Court.

## LAW AND ANALYSIS

Although Sisk's motion is styled as two separate requests (a motion to suppress and a motion for a *Franks* hearing), both seek the same ultimate result. In short, Sisk seeks an Order suppressing the evidence recovered via the search warrant executed at 966 McPherson Avenue on November 6, 2020. (See Mot., Doc. 27, #66). Sisk requests that relief more directly at first, arguing that the evidence should be suppressed because the warrant authorizing the search of 966 McPherson Avenue was not supported by probable cause. (*Id.* at #68). The second part of Sisk's motion takes a related, though more circuitous, route to that same desired result—it argues that Sisk is entitled to a *Franks* hearing because the search warrant affidavit contained intentionally or recklessly false statements that were material to a finding of probable cause. (*Id.* at #69–70); *see generally Franks v. Delaware*, 438 U.S. 154 (1978). But that second argument is, essentially, a suppression motion with extra steps. *See United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (explaining that a defendant must make certain preliminary showings to establish his or her entitlement to a *Franks* hearing and then, at the hearing, must substantiate those preliminary showings by a preponderance of the evidence to mandate suppression).

The Court starts its analysis with Sisk's request for a *Franks* hearing. Although a defendant is entitled to challenge the veracity of the search warrant affidavit, *see Franks*, 438 U.S. at 155–56, obtaining a hearing on that issue entails carrying a "heavy burden." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Specifically, a defendant is entitled to a hearing only upon a "substantial preliminary showing" that: (1) the affiant knowingly and intentionally, or with reckless disregard

for the truth, included a false statement in the warrant affidavit, and (2) the allegedly false statement is necessary to the finding of probable cause. *Franks*, 438 U.S. at 155–56.[2] To make this showing, the defendant must offer more than mere conclusions; he must point out specifically, with supporting reasons, the portion of the warrant affidavit he claims is false. *Id.* at 171. And the question of whether a defendant has carried this preliminary burden is "committed to the sound discretion of the district court." *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017) ("Whether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit, given alleged misstatements and omissions, is committed to the sound discretion of the district court." (citing *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001))). Moreover, even if Sisk succeeds in this preliminary showing, and the Court granted Sisk a hearing, Sisk would still bear the burden of establishing by a preponderance of the evidence at that hearing that "false statements were made either intentionally or with reckless disregard for the truth and that without these statements there is insufficient content in the affidavit to support a finding of probable cause." *See Bennett*, 905 F.2d at 934. Only then would suppression of the recovered evidence be warranted. *Id.*

In an effort to meet his preliminary burden (and thus justify an evidentiary hearing), Sisk argues that the "only support of an actual connection" between 966

---

[2] To merit a hearing on the veracity of the statements in the search warrant affidavit, a defendant must additionally "accompany his allegations with an offer of proof" and "should provide supporting affidavits or explain their absence." *Bennett*, 905 F.2d at 934 (6th Cir. 1990) (citing *Franks*, 438 U.S. at 171). Although Sisk's Motion is not accompanied by an offer of proof or other supporting affidavits, the Court ultimately resolves the motion on separate grounds, and thus does not consider whether this failure is dispositive.

McPherson Avenue and the alleged drug trafficking is Connley's averment that, between November 2 and November 4, 2020, officers observed Sisk exit the 966 McPherson Avenue residence and make a hand-to-hand drug sale in front of the house. (Mot., Doc. 27, #69). Sisk contends that this statement in the affidavit is false (or at least that a hearing on its falsity is required) because the statement appears to contradict the contemporaneous notes from a CPD officer regarding the November 2 buy. (*Id.*; *see also id.* at #70 (referring to "[d]etailed notes from the date in question [i.e., November 2, 2020] … that directly contradict statements made in the affidavit")).

In fairness to Sisk, the affidavit and the notes do appear to tell somewhat different stories about what occurred on that date. According to the search warrant affidavit, "between … November 2 and November 4," Sisk exited 966 McPherson Avenue on foot and met the CI "in front of the residence." (Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2, #87). The two then "walked north on McPherson Avenue" and engaged in the transaction. The investigating officer's notes regarding that purchase, by contrast, indicate that on November 2, officers observed Sisk *drive* up to the Kroger parking lot (and on the Enright Street side, rather than the McPherson Avenue side) in a Hyundai, and that the exchange was made through the passenger-side window. (Nov. 2, 2020 Controlled Buy Notes, Reply Ex. B, Doc. 30, #99).

The Court concludes, however, that it need not determine whether this apparent inconsistency makes the "substantial" preliminary showing of a knowing, intentional, or reckless falsity that is required for a *Franks* hearing. That is because

of a separate, but related, principle that applies to such requests—namely, a court need not hold a hearing where, even absent the challenged statements, the affidavit nonetheless provided sufficient probable cause to issue the search warrant. *See United States v. Caldwell*, 221 F.3d 1336 (Table), 2000 WL 875694, at *3 (6th Cir. June 19, 2000) ("Even assuming [Sisk] can make the substantial preliminary showing necessary to trigger a *Franks* hearing, the court need not conduct an evidentiary hearing if the court finds that probable cause exists on the face of the affidavit with the contested information set to one side."); *Bennett*, 905 F.2d at 934 ("If probable cause exists absent the challenged statements, a defendant is entitled to no more….").

As applicable here, that means a hearing is not warranted if the affidavit—without the statements related to the November 2 controlled purchase—still gave the reviewing magistrate "a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing." *United States v. McGhee*, Case No. 17-cr-20154, 2017 WL 4837758, at *4 (E.D. Mich. Oct. 26, 2017) (citing *Jones v. United States*, 362 U.S. 257, 271 (1960) and *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). The Court concludes that, here, the remaining unchallenged statements in the affidavit in fact do provide that substantial basis. A brief review of relevant Fourth Amendment principles helps explain why that is so.

The Fourth Amendment protects persons against "unreasonable searches and seizures." It does so in large part by requiring that warrants issue only "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV; *see also United States v. Murphy*, 241 F.3d 447, 457 (6th Cir. 2001). The probable cause

standard is a "practical, non-technical conception" that deals with the "factual and practical considerations of everyday life." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). "Probable cause to conduct a search exists when the facts and circumstances described in the affidavit indicate a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983) (citations omitted).

Whether an affidavit demonstrates this "fair probability" depends on the totality of the circumstances. *Gates*, 462 U.S. at 230. Moreover, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). As noted above, a court will not disturb the issuing magistrate's conclusion so long as the magistrate had a "substantial basis for ... conclud[ing]" that a search would uncover evidence of wrongdoing. *Jones*, 362 U.S. at 271; *Davidson*, 936 F.2d at 859. That being said, it is not enough that a magistrate conclude that criminal activity occurred *somewhere*. Rather, there must be a clear enough "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

As applied to Sisk's case, that means that the affidavit (without reference to the statements concerning the November 2, 2020, buy) must establish a "fair probability" that evidence of illegal drug activity would be found at 966 McPherson Avenue. The affidavit does so. First, in the unchallenged portion of the affidavit, the

affiant, Officer Connley, states that he saw Sisk leave the house "immediately prior to an arranged controlled purchase" in October 2020, "travel directly to meet the CI to sell him/her fentanyl," and "immediately return to" the house. (Resp., Doc. 29, #78; Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2, #87). Moreover, the affiant also notes that the confidential informant told him that Sisk was using "two vehicles to conduct his drug trafficking operation," for which the confidential informant provided identifying information. (Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2, #88). The affiant determined that both vehicles, one of which was registered to Sisk, and one to another person, were registered with the Ohio BMV at the 966 McPherson Avenue address. (*Id.*).

Under the deferential standard that applies, these two unchallenged facts support the magistrate's finding of a nexus between that address and the suspected narcotics trafficking activities. Indeed, as the government notes, the Sixth Circuit has held that "[c]ommission of a drug transaction outside of a house and one participant's walking back into the house … plainly demonstrate[s] a sufficient nexus with the house" to support a finding of probable cause. *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). In so holding, the Sixth Circuit rejected the defendant's argument that "the affidavit was deficient because it 'contained no allegation by the confidential informant that there was any history of prior drug activity at the residence or whether or not any controlled substances remained in the residence after the purported sale.'" *Id.* To the contrary, the court determined that a single drug transaction sufficed to draw the requisite nexus between the place to be searched and

9

the evidence sought. *See id.*; *see also United States v. Henry*, 299 F. App'x 484, 485 (6th Cir. 2008) (single controlled drug transaction inside of residence provided probable cause to support search warrant for residence); *United States v. Jackson*, 470 F.3d 299, 307–08 (6th Cir. 2006) (single controlled drug transaction on the curtilage of defendant's residence provided probable cause to support search warrant).

Under that caselaw, the single transaction that the affiant stated occurred between October 27 and October 29, 2020, suffices to establish the requisite nexus here. (Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2, #87). That is, Officer Connley states that he observed Sisk exit 966 McPherson Avenue, meet the confidential informant, exchange fentanyl for U.S. currency, and immediately return to the 966 McPherson Avenue address. (*Id.*). That is enough. And the fact that "two vehicles [used] to conduct [Sisk's] drug trafficking operation," (*id.* at #88), were registered to that address also supports that same result.

Sisk's argument to the contrary is unpersuasive. Sisk likens the warrant affidavit at issue here to the affidavit the Sixth Circuit found lacking in *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005). (*See* Reply, Doc. 30, #94). This comparison, though, is inapt. Importantly, the affidavit in *Frazier* was based "almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnessed illegal activity on the premises of the proposed search)." *Frazier*, 423 F.3d at 533. Thus, that case stands at most for the proposition that, where the defendant's drug-dealing activity is based on unreliable hearsay, "the allegation that the

10

defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Id.* (citing *United States v. Savoca*, 761 F.2d 292, 295 (6th Cir. 1985)); *see also United States v. Reed*, 993 F.3d 441, 449 (6th Cir.), cert. denied, 142 S. Ct. 289 (2021) (explaining that a defendant being "described as a drug dealer only by an unreliable informant" is a "fact-specific rationale[]" the Sixth Circuit has used to "limit[] the principle that a drug dealer's ongoing drug operations can create probable cause to search the dealer's home").[3]

The affidavit here, however, is distinguishable from the *Frazier* affidavit on at least two related grounds. First, the affidavit here states that the CI is "reliable," in that the CI had previously provided information that proved true and led to the recovery of narcotics and convictions of narcotics traffickers. (Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2, #87). Thus, the "unreliable informant" rule *Frazier* articulates, and *Reed* repeats, has no application here. *Cf. United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) ("[I]nformation supplied by an informant of proven reliability may be sufficient, standing alone, to demonstrate probable cause. In other words, if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." (internal citations omitted)).

---

[3] Although the Sixth Circuit has never held that "a suspect's 'status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home,'" *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (citation omitted), it has made clear that very little more is required. For example, "[e]ven if no specific evidence ties drug dealing to a home," the Sixth Circuit considers it "'well established' that a nexus to search the home can exist" if an officer identifies "recent, reliable evidence of drug activity." *See Reed*, 993 F.3d at 448–49 (6th Cir.) (citing, e.g., *United States v. Feagan*, 472 F. App'x 382, 392 (6th Cir. 2012)).

Second, regardless of the CI's reliability, the affiant states that he himself observed Sisk exit the 966 McPherson Avenue residence in late October 2020, make a drug transaction a few hundred feet away, and return to the residence. (Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2, #87); *see Jackson*, 470 F.3d at 307–08 (affidavit sufficient despite a lack of detail regarding informant's reliability because the officer searched the informant prior to the controlled buy, monitored the buy, observed the two participants, and tested the purchased substance). Thus, the affidavit at issue here is more like the affidavit the Sixth Circuit found sufficient in *Ellison* than the affidavit it found lacking in *Frazier*; the affidavit offers a specific link between drug activity and the address to be searched. It does not, as Sisk seems to suggest, rely only on Sisk's status as a "drug dealer" coupled with his residence at 966 McPherson Avenue.

This latter point also forecloses another of Sisk's arguments. That is, Sisk briefly argues that the affidavit failed to "establish" that Sisk in fact resided at 966 McPherson Avenue, and that this failure counsels against a finding of probable cause. (Mot., Doc. 27, #68–69 ("[O]fficers failed to establish that Mr. Sisk lived at this address. This fact alone should establish a need for additional evidence of a specific nexus connecting the address to the alleged activity.")). But, again, the probable cause determination did not necessarily rest on (though it likely could have rested on) the inference that "in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)). Rather, the affidavit

"plainly demonstrated a sufficient nexus" between 966 McPherson Avenue and drug activity through observation of a "drug transaction outside of [the] house and one participant's walking back into the house." *Ellison*, 632 F.3d at 349. As the Sixth Circuit explained in *United States v. Pinson*, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." 321 F.3d 558, 564 (6th Cir. 2003) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). While, in certain contexts, the fact that the property owner *is* suspected of a crime may imply that the evidence to be seized is located on that property, a search warrant need not, as a constitutional matter, "identify the person in charge of the premises or name the person in possession or any other person as the offender." *Id.* (quoting *Zurcher*, 436 U.S. at 556). Thus, even assuming the affidavit failed to show that Sisk in fact "lived" at the 966 McPherson Avenue address, such a failure would not—and did not—preclude a finding of probable cause.

In sum, the Court concludes that, even without reference to the challenged statement about the buy on November 2, 2020, the search warrant affidavit at issue gave the issuing magistrate a "substantial basis for ... conclud[ing]" that a search would uncover evidence of wrongdoing at 966 McPherson Avenue. In particular, either the information relating to the *other* buy (in October), *or* the fact that two vehicles allegedly used "to conduct [Sisk's] drug trafficking operation" were registered to the 966 McPherson Avenue address, would suffice.

13

Perhaps recognizing this problem, Sisk uses his Reply brief to mount attacks on these two statements. But there are two problems with that approach. First, a reply brief is not a vehicle for raising new arguments. *Lusk v. Lamin*, No. 2:20-cv-6064, 2022 WL 912258, at *4 (S.D. Ohio Mar. 29, 2022) ("It is well-established that a party 'cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition.'" (quoting *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002))). Second, at least as to the vehicle-registration issue, Sisk's arguments in his Reply still fall short of the preliminary showing of falsity necessary to justify a *Franks* hearing. Sisk observes, for example, that he did not purchase one of the two vehicles until October 14, 2020. (Reply, Doc. 30, #95). But so what? The drug trafficking operation to which the affiant was testifying—and as to which the confidential informant had provided information—included conduct that occurred for some weeks *after* that vehicle purchase date. Thus, the purchase date does little to show that the affiant's statement, which in turn relied on information from a confidential informant who previously had proven him- or herself reliable, was knowingly, intentionally, or recklessly false.

Sisk also points out that the contemporaneous buy notes reflect that Sisk made the October 22 transaction in a Hyundai bearing license plate number HYH4810, which is different from the license plate number attributed to the white Hyundai registered to 966 McPherson Avenue and mentioned in the Search Warrant Affidavit. (*Id.*; *see* Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2, #88). To be sure, this discrepancy casts *some* doubt on Connley's averment that he observed Sisk driving

14

the white Hyundai registered at 966 McPherson Avenue "on multiple occasions during various controlled buys." (Aff. for Search Warrant, Resp. Ex. 2, Doc. 29-2, #88). But, again, this does little to show that the statement in the Affidavit was knowingly, intentionally, or recklessly false. Even assuming the discrepancy shows that affidavit statement was erroneous, "*Franks* recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (citing *Franks*, 438 U.S. at 165). And, in any event, the Court concludes that the affidavit provided sufficient basis for a finding of probable cause even absent this statement regarding the white Hyundai.

Because the Court concludes that Sisk has failed to make the necessary showing to warrant a *Franks* hearing, the Court both (1) declines to order a hearing, and (2) declines to suppress the evidence recovered from 966 McPherson Avenue.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Sisk's Combined Motion to Suppress and Motion for a *Franks* Hearing (Doc. 27).

**SO ORDERED.**

May 23, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

15